First case this afternoon is case number 4110842, Cole v. Cole for the appellant, G. Edward Mormon for the appellee, Wayne Skiggin and Jason Johnson. Are you going to be splitting your time? No, your honor, just Mr. Coates. Okay, thank you very much. And Mr. Mormon, you may proceed. May it please the court, I think the issue before the court is really specifically an issue about justice. Whether or not the particular payments that the plaintiff is complaining about making, where part of his monthly payments are paying off a portion of a loan that went to buy his brother a farm in Macoupin County, whether those violate the fundamental principles of justice, equity, and good conscience. So that contrary to a lot of cases where the court may be looking over a set of facts and determining whether or not some statute applies to these facts or a case or a rule or a constitutional provision, what we're really talking about here is whether or not this particular situation violates fundamental principles of justice, equity, and good conscience. So it's really a direct judgment about whether or not this is a just situation. And obviously there's been an argument raised that, well, we don't have to reach the justice issue here in this case because there's no real benefit to the defendant here. The defendant was benefited when his father gave him a farm, but he's not really benefited by these payments. Our position is, well, yes, he is benefited by these payments because payments, when the father gave him the farm, sadly, he didn't pay for all of it. If my dad chooses to give my brother a bunch of money and not give it to me, do I have a right to complain about that? No, you sure don't. And when that happened, when dad here gave brother the farm years ago, there's no lawsuit that can be filed there or at any time over that particular thing. But what happened here in addition to that, not only did that occur, but where father gave son a farm, which he has a perfect right to do. But in this case, it turned out, it was not discovered until much later, that father ran up $250,000 in debt to pay for a good portion of that farm. And when father died, he had $400,000 in debt. The sons agreed to split that debt, and so it turned out then much later that the one son discovered, wait a minute, dad has the right to give him a farm. We're not complaining about that. But now I've just agreed to pay half of the $250,000 that was run up in debt. But the dad ran it up in debt, right? Yes, he did run it up in debt, along with other debt, too. And he put the debt on his farm, right? No, the debt was not on his farm. Well, let's talk about farm. There was a family farm. The debt was on that family farm. The debt was not on the farm he gave to the son. That's exactly my point. That's exactly my point. Because when the dad passed away, we had a debt due and owing from the estate of the dad, correct? Yes, we do. It was about $400,000. It turns out $250,000 of that was used to buy that other farm, which we didn't know. I understand that. But the agreement that the two brothers made was to pay off the father's debts and presumably, I would guess, to save the family farm. That's right. That's right. So if the dad had gambled away $400,000, what's the difference? What's the difference is that the $250,000 really was not gambled away. It was not frittered away. It was not run up in the operation of that business. It turns out they didn't know it at the time. I don't know even whether the first brother knew it at the time. I certainly don't have any proof of that, and that's never been an issue that he was being fraudulent about it. I don't know. In fact, I think once when we asked him, is that what he did with that money, I think he might have said something like, I don't know, I guess so. I don't know that he knew, and it's certainly not our claim that he knew and misrepresented and defrauded. It's just the mere fact that that's what that money had gone for, as we now know. That's what that money had gone for. And my client had agreed to pay half of these debts, and it turns out that includes paying half of that $250,000. Well, when you say he agreed to pay half the debts, the debt was a lien on the family fund, was it not? It was, yes, specifically a mortgage to a land bank, yes. So is it fair to say he has agreed to pay half of the debt, or is it more accurate to say he chose to accept the family farm, which had the debt on it? Well, I mean, he did do that. I mean, that's what he did, not realizing that $250,000 of that had been used to pay a big chunk of debt. I know he didn't realize that. Yeah, I mean, he did agree to do that. And again, the dad encumbered the farm. The farm was left to the two boys. If you want to accept the gift of the farm, you've got to pay the debt on it, don't you? I think that's right. I think that's right. I mean, the debt was on the family farm. So, I mean, if, and that gets me to what I'm talking about here, about what I think the issue in the case is. Some of your questions imply to me that you may say, well, I don't, that you may think, and I don't presume to read your mind, but that if some hypothetical person might say, well, I don't think there's anything unfair about that. I don't think there's any injustice in that at all that the brother, that one brother. My initial question, if my dad chooses to give a big chunk of money to my brother, is that fair? But whether it's fair or not, that's his power. That's his right. Of course, you're correct. I mean, he has that right, and he had that right here. We're not questioning that right. And this lawsuit is not about that right of a father to treat somebody unequal. And, I mean, everybody knows there's no lawsuit to be filed over daddy liked you best. And that's not what this is. This is about... Did Charles make any fraudulent representations to your point? No. This is not a fraud case. If Charles knew, I certainly don't have any evidence of that. Never accused him of it. And certainly no proof of it. So this case is not a fraud case. You lied to me, and you knew you were lying, and misled me, and all that sort of thing. There's never been a threat of that. How do you prevail if there's no fraud? How you prevail if there's no fraud is if there's unjust enrichment. All right? And if it's a fraud case, that's a whole different set of theories, and that's a whole different set of facts. So you're not in any way arguing there was fraud in the concealment, that there was some kind of duty before they refinanced the family farm to tell your client that, hey, this debt was incurred in the family farm to help pay for a farm that ultimately was in my name? As I said, so far as I know, he didn't know it. I mean, I certainly have no proof that he knew it. He hasn't admitted or acknowledged it. Who didn't know what? The brother who got the farm given to him. All right? It turns out that $250,000 of the debt was used to pay for a good chunk of that farm. Whether the recipient of that farm, the brother, the defendant, Charles Cole, whether he knew that that's where his father got this money. I didn't realize that myself. So Charles didn't even know that his farm got paid for because his father had put an additional mortgage on the family farm. There is no proof of that. I mean, as to what the underlying fact is, I don't know, but there's certainly no proof of that. We didn't allege that. And if we had alleged it, we couldn't have proved it. No, this is strictly on whether or not payment of, which is what my client's doing, which he didn't know at the time that he started, but years later he discovered that $250,000 of this debt had been used to buy his brother the farm. And we felt, we alleged, this was unjust to require him to do that, that this was a detriment to him, a benefit to the other guy. This constitutes unjust enrichment. Unjust enrichment requires a mistake or wrongful conduct. Are either one of those present here? Mistake. Mistake? There's a mistake. My client didn't know that he was going to be paying for half of $250,000. It was the father who did this. Did the father make a mistake? I think he did it on purpose. I don't think it was a mistake. I think he purposely incurred debt to buy the other boy the farm. So where's the mistake? Well, the mistake was that when my client agreed to do this, he did not know. He was acting out of ignorance of one fact, and that was that $250,000 of this debt that he was assuming half of, $250,000 of that debt had been used to buy his brother the farm, that his brother had benefited solely from this. He didn't know that. That was a mistake on his part. That was an action taken unknowingly that that had occurred. Well, are you asking that the farm be given to the other brother, and he be forced to pay all the debt? No. I'm asking. I mean, the other brother has the McCubbin County farm. But the family farm is the solution to give the family farm to Charles and require him to pay all the debt? No. No. Oh, God. How does Stephen get his share of the family farm without paying the debt on the family farm? Well, he is paying the debt on the family farm. Yeah, but you're complaining about it. Well, I'm complaining about not every part of the debt. I'm complaining about all the debt that relates to the family farm. I'm not complaining about all the debt that applies to the family farm. I'm complaining about $250,000 of that debt, which was used to buy the McCubbin County farm. That's the portion of it. What I think is, if that's found to be unjust enrichment of Charles, who was the guy that has the McCubbin County farm, if that's found to be unjust enrichment, what should be done is he should step in and pay that half of the $250,000, in other words, $125,000. He should pay for his own farm, which is the McCubbin County farm, and he should divide everything. That's how I think you could correct unjust. If the court finds that that's unjust enrichment, then I think that's the way to correct it, probably by sending it back and let a trial court determine really what the damages ought to be. But I think the issue before this court is whether or not that particular circumstance or set of facts where we're paying half of $250,000 portion of what was owed on the family farm that bought Brother the McCubbin County property. And if that's fair and if that's okay and there's nothing unjust about that, then there's no unjust enrichment. I think there is enrichment, but if facing those circumstances a court rules that that doesn't violate any fundamental principles of justice, equity, and good conscience, then whether there's enrichment or not, there's no unjust enrichment. We think that is not fair, that is not just for us to be paying that. That's our assertion. That's our position. Okay, thank you. You'll have rebuttal if you want it. Please proceed. May it please the court. Wayne Skegan for the defendant and appellee Charles Cole. Summary judgment was properly granted by the trial court because the facts and the law don't support a claim of unjust enrichment in these circumstances and as reflected by these undisputed facts. The case is in part about justice, but the cause of action of unjust enrichment is not as amorphous as Plaintiff is suggesting. There are parameters and boundaries to that cause of action. There's a certain framework that must be met for that cause of action to lie. Because here, the parties, the brothers, had an express agreement that no one is disputing, was honored in full. An unjust enrichment claim can't lie as a matter of law and separate and independent of that premise. The facts themselves do not support an unjust enrichment claim because there was no connection between any benefit to the plaintiff, excuse me, any benefit to the defendant and any detriment to the plaintiff. I want to refer briefly for two different propositions to the Illinois Supreme Court's decision in the Lathrop v. Bell Savings case. Because the court in that case, which we cite in our brief, made two points. One is the basic premise that's been upheld again and again by Illinois decisions. That where the party's relationship is governed by an express agreement, the cause of action of unjust enrichment doesn't lie as a matter of law. That cause of action is to create an implied contract. But when you have an actual express contract, the claim doesn't even come into play as a matter of law. In that same case, the Supreme Court also said, and this goes to the assessment of the equities of the case, separate and apart from there being an express agreement. The court said, a person is not entitled to compensation on the grounds of unjust enrichment. If he receives from the other that which it was agreed between them, the other should give in return. Here, the plaintiff, Stephen, got what he expected. He got what he bargained for. By agreeing with his brother in 1993 to enter this refinancing arrangement where they paid off the federal land bank's lien, refinanced the property with the Green County National Bank, and agreed to share in the burden of repaying that refinance loan, the plaintiff got what he wanted. He prevented the family farm from being foreclosed and lost in the foreclosure process. He saved the brother's mother's house from being lost in the foreclosure process. And he wound up with half of that family farm. The brother shared in the loan burden, and then they split the property, and the plaintiff got a property that he otherwise would not have gotten, and he got it in direct proportion to his share of the debt. There was the pre-existing debt on the family farm, which, as your honors have pointed out, was incurred by the father. So there can never be unjust enrichment if there is a specific agreement? There can never be unjust enrichment when there is a specific agreement, yes, your honor. Well, let me ask you a hypothetical. Suppose the two brothers decided to put a mortgage on the family farm to pay off their father's debts, and instead, Charles uses the money to pay off his own personal debts. He misapplies the money. Isn't there a problem with that? There is, and the solution to that problem is breach of contract. They have an agreement where we're going to put a mortgage on it, and we're going to pay it back evenly, and we're going to use the proceeds from the farming business or some other agreed source of funds to pay off this jointly incurred debt, and if one brother breaches that agreement, the solution is breach of contract. If the defendant brother goes into that deal with some sort of fraudulent intent, the remedy is a fraud cause of action, in addition to a breach of contract cause of action. But it's because there was those agreed-upon terms that you don't need to rely on unjust enrichment. Now, we are not saying that that is the only reason plaintiffs' claims do not survive here, because separate and apart from the existence of an express agreement, the facts don't fit the framework of unjust enrichment for other reasons. But the existence of that express agreement obviates the cause of action completely as a matter of law. In this case, if Charles knew that that money was spent on his farm, but he told Stephen that that was not the case, would Stephen have a cause of action? There might be a fact issue there, and the fact issue is, was the undisclosed or misrepresented fact a material one? I think all the parties agree that those aren't the facts, and the plaintiff has conceded in his deposition that there was no misrepresentation. But taking your honors hypothetical, there would be a fraud cause of action if there was a misrepresentation of a material fact. But not disclosing the source of the debt that led to the encumbrance on the family farm, is that really a material fact? It doesn't affect what plaintiff's getting out of the deal. He's paying for half the debt, and he's getting half the farm. He's avoiding foreclosure. He's saving mother's house. He's getting what he's bargained for. So one could say, well, the source of that debt, what led to that encumbrance years ago, really is irrelevant, and it's not a material fact within the elements of a fraud cause of action. But we know that isn't what happened here. So because there is an express agreement, plaintiff's two claims that wouldn't be precluded as a matter of law, like unjust enrichment is, would be, well, I was fraudulently induced. But there's no evidence, as Mr. Mormon points out, that there was any knowing and fraudulent inducement. I'm just sort of amazed by your argument that as long as there's an agreement, express agreement, there can never be unjust enrichment. Well, that is what the Lathrop case said. I know that's what you say, but as I understand unjust enrichment, if the defendant procured the benefit through some sort of wrongful conduct, then there can be an action for unjust enrichment. Well, in my brief, Your Honor, I point out circumstances where an unjust enrichment cause of action lies because of wrongful conduct. I don't believe those situations involve an express agreement, but I'd like to address those because if we set aside the preclusion I've already been talking about based on the existence of an express agreement, and let's just talk about whether these facts satisfy the elements of unjust enrichment irrespective of this express agreement. We have a benefit being conferred by a third party, their late father. He conferred that benefit starting in 1977 when he helped Charles get the Macoupin property. The law is very specific in Illinois as to what happens when the benefit element of an unjust enrichment claim comes from a third party. And the Illinois Supreme Court and other cases have addressed it. The Supreme Court did in the HPI health care case. They said unjust enrichment claim may lie where the benefit is conferred by a third party rather than by the plaintiff, where the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead. The defendant procured the benefit from the third party through some type of wrongful conduct, such as fraud, or the plaintiff, for some other reason, had a better claim to the benefit than the defendant. Here, none of those elements or alternative routes to unjust enrichment lie because it's agreed that Charles didn't deceive the father, Charles didn't dupe the father in any way, Charles didn't reach any agreement with the father, and the plaintiff has no equal or superior right to Charles to the contributions that the father made. Why did the father want to prefer Charles over Stephen? Why? We don't know why, but we know that, and it's in the record and in the briefing. Maybe it was just a mistake. He intended to pay off the debt, but he never got it done before he died. Well, there's no evidence it was a loan, that there was any requisite of repayment. The estate did not bring a claim against Charles. Stephen, the plaintiff, testified that he had asked the father for a contribution a couple of years before that, so he could get his family, his own individual farm, and the father denied it. A couple of years later, the father helps out Charles. Maybe that didn't sit too well with Stephen over the years, but as the parties agreed, the father had every right to treat the sons separately and differently. He had the right, but was that his intent? There's no evidence it wasn't. He carried out the gift. Shouldn't we have a general presumption that all children are to be treated equally? No, Your Honor. The parents have the freedom and the right to do as they wish. They have the freedom to do as they wish, but was that the intent here? To prefer one child over the other? Apparently it was, Your Honor, because the gift... Now, there's evidence in the record that other things were given to Stephen, but that's ancillary to the claims here. Stephen testified that he got farm equipment from the father that Charles didn't get. So this wasn't solely a one-sided relationship. One brother got the farm in Macoubin County. The other brother got a lot of expensive farm equipment. Charles isn't complaining about that, because it was the father's decision to do what he wished with his assets. But what is missing, another thing that is missing from the claim is there was a benefit conferred to Charles by the father, which didn't amount to a detriment to Plaintiff Stephen at all. The debt that Stephen agreed to share the repayment of with Charles wasn't the debt on the Macoubin property. It was the debt on the family farm. So there's no... What we don't have here is we have a disconnect between the benefit and the detriment. When Plaintiff Stephen agreed to share in that debt, in the repayment of the debt on the family farm, he didn't benefit Charles. Charles already had the Macoubin property, and he'd had it for decades or years. And it didn't affect his debt on the Macoubin property. It didn't affect his ownership interest. So Stephen only benefited himself, because he got an ownership interest in the family farm equal to the amount or the proportion of the debt he agreed to shoulder. So whether the court analyzes the case as being precluded by the existence of an express agreement, or looks at the law as handed down by the Illinois Supreme Court on situations where a third party conveys a benefit, or just the general unjust enrichment framework, which is also quoted in the HPI health care case. It's where the defendant has unjustly retained a benefit to the plaintiff's detriment. And the restatement of restitution and unjust enrichment, which Illinois courts have followed, says liability derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant. So there's a connection between the detriment on the one hand and the benefit on the other. And we don't have that connection here at all. The benefit was conferred by the father on the Macoubin property, and that didn't affect Stephen's wherewithal at all. Stephen took on a debt and paid off part of that debt, which didn't benefit Charles at all. There are two separate transactions, and there's been no authority cited to this court for commingling the two transactions as if they were one. The restatement describes many scenarios where a mistake or an injustice or a fraud results in one party paying money that benefits the defendant. A plaintiff mistakenly pays off the encumbrance on a piece of land thinking it was his. Well, that plaintiff has an unjust enrichment claim against the landowner whose debt he paid off. Stephen did not pay off any debt mistakenly. That was Charles' debt. He paid off the debt on the family farm, the preexisting debt incurred by the father. Unjust enrichment is not intended, and as a matter of law, may not be a surrogate for a breach of contract claim or a fraudulent inducement claim, neither of which is supported by the facts here. In fact, the result that the plaintiff seeks would cause an injustice, because the plaintiff wants to be relieved of the burden or a substantial amount of the debt burden on the family farm, yet keep half of that family farm. That would be an injustice to rewrite history and yet allow him to keep the farm. It would be imposing on Charles a debt he never agreed to. He never agreed to take on the whole debt, yet only take half the farm. That wasn't the party's agreement, and that wouldn't be fair, and that wouldn't be just. At the end of the day, Your Honor, the plaintiff got what he bargained for. He wanted to save the family's property, he wanted to keep his mother's house, and he wanted half the family farm for himself. And to this day, he has half of that property. He now owns it separately from his brother. He makes his living off of it. There's nothing unjust about that. He has not incurred any disproportionate financial burden. Thank you. Thank you. Rebuttal, please. I think counsel's mistaken about these side issues. I really believe that the only issue, the only actual issue before the court, is whether this, in effect, payment of half of the $250,000 that went to buy the MacCoupin farm, whether that is just or whether it's not. The matter of the express agreement, I don't think changes that fundamental issue because Steve Cole, the plaintiff, did not make an express agreement to pay off half of the money that went to the MacCoupin farm. Did Stephen know that he was paying off some of the debt on the MacCoupin farm? He knew he was paying off $36,000 because that was still owed on the MacCoupin farm. And when they got the new loan to pay off dad's loans, $36,000 of that went to pay off the MacCoupin farm, and Steve knew that. And he has no complaint about that? No. I mean, he knew it, and it was part of what the bank insisted on, and he went along with it. So really his complaint is that the debt was more than $36,000. It was a larger debt than that. Yeah. I mean, it was no longer a legal debt. Charles couldn't have been taken to court to pay this other $250,000 on the MacCoupin farm. It would have been, we say, it would have been just for him to pay for his own farm and not have Steve pay for half of it. And I really do believe that that is the only actual issue that needs to be determined. And if the determination is there's nothing unjust about telling Steve, you've got to pay half of this, you've got to go ahead and pay half of this $250,000 even though it went toward the purchase of the MacCoupin farm. We'd be telling Steve that or Charles would be? I think the court would be telling him that there's nothing unjust about that. Well, Charles never said that's what you have to do. Well, Charles, in a certain sense, Charles didn't say anything. He said he didn't know about this. He said he did not know about this. I don't know that he did. I mean, I got no proof that he did. And so this is not, he didn't say anything about it. It's conceivable just hypothetically. Yeah, he might have known about it, but I got no evidence of that. We have no evidence of that. And I think that if the provable facts were that he knew all about that and kept it quiet, that you might be able to make something of a kind of fraud by silence in a situation like that. But I don't have any evidence of that sort. So I believe that the issue is, I think that before the court is this question of whether or not this is perfectly just for Stephen to pay half of this $250 or that there's something unjust about it. And if there's something unjust about it, that the case that Charles has some benefits and that those benefits are unjust enrichment and this case could be sent back to determine how we figure out the numbers on that. Okay, thanks for your arguments. The case is submitted. The court stands in recess.